Commonwealth v. Fisher.

CASE 64—INDICTMENT AGAINST F. P. FISHER FOR EMBEZZLEMENT.—
MAY 27.

## Commonwealth v. Fisher.

APPEAL FROM CARLISLE CIRCUIT COURT.

JUDGMENT DISMISSING INDICTMENT ON DEMURRER AND COMMONWEALTH APPEALS. REVERSED.

EMBEZZLEMENT—MISAPPROPRIATION BY SHERIFF OF TAXES COLLECTED
—SUFFICIENCY OF INDICTMENT—ALLEGATION OF DEMAND.

Held:   1. Under Kentucky Statutes, section 1205, providing that if any person having the control, custody, or distinct possession of any money belonging to or for the use of any county, and under any trust or duty "to keep, return, deliver, cancel, destroy or specifically apply the same, or any part thereof, shall, in violation of such trust or duty, willfully misapply, misappropriate, conceal, use, loan or otherwise wrongfully and fraudulently dispose of such money . . . for his own purposes or use of another, with intent to deprive the owner or authority of the same, or of any part thereof, for the benefit of the wrongdoer or of any other person," such person

| 113 | 491 |
| 125 | 251 |
| f126 | 539 |

| 113 | 491 |
| f128 | 206 |

| 113 | 491 |
| 138 | 5 |

shall be confined in the penitentiary, an indictment against a
sheriff for embezzlement alleged to have been committed by
misappropriating the county· levy collected by him need not
allege that there had been a settlement with the defendant or
any demand upon or direction to him to pay over the money
'in his hands.

2. An officer may be guilty of embezzlement though he was enti-
tled to a commission out of the money collected and used by
him.

H. J. MOORMAN, COMMONWEALTH'S 'ATTORNEY, FIRST DISTRICT, FOR
COMMONWEALTH.

The only objection urged to the indictment in the lower court,
and upon which the court sustained the demurrer thereto,
is that a sheriff who misapplies or fraudulently appropriates
taxes collected by him, is not embraced by section 1205, Ken-
tucky Statutes, which so far as applicable, is as follows: "If
any person having the custody, control or distinct possession
of any money . . . belonging to or for the use of the
State or any county, . . . and under any trust or duty,
to keep, return, deliver, or specifically apply the same or any
part thereof, shall, in violation of such trust or duty, will-
'fully misapply, misappropriate, conceal, use, loan or other-
wise wrongfully and fraudulently dispose of such money, or
any part thereof, for his own purpose, or use of another, with
the intent to deprive the owner or authority of the same or
any part thereof, for the benefit of the wrongdoer or any
other person, such person so offending shall be confined, &c."

The court held that the indictment was good in form but
does not apply to a sheriff..

We contend that the purpose and intention of the Legisla-
ture in passing this statute was to include and punish sher-
iffs and all other officers who fraudulently appropriate money
collected by them for the State or county to their own use,
and thus remedy this fast growing evil.

## AUTHORITIES CITED.

Kentucky Statutes, sec. 1205; Com. v. Turner, 8 Bush, 2;
Hinkle v. Com., 23 R., 1988; Bodley v. Com., 17 R., 561;
Wharton's Cr. Law (10 ed.) secs. 1012, 1016; Snapp v. Com.,
6 R., 34; Clark v. Com., 16 R., 703; Am. & Eng. Ency., vol.
6 (1st ed.) sec. 4, pp. 475-6.

BUGG & WICKLIFFE, FOR APPELLANT. ·

H. J. MOORMAN & C. J. PRATT, ATTORNEY GENERAL, OF COUNSEL.  '

## POINTS AND AUTHORITIES.

Section 4145, Kentucky Statutes, is not inconsistent with section 1205, Kentucky Statutes, and sheriffs may commit either or both offenses. One of these sections is designed by the Legislature to punish a sheriff for misapplying funds, to some other source than the one that by law it should be applied. The other is designed to punish any person, including sheriffs, for misapplying, misappropriating, and conversion to his own use, with the criminal intent to deprive the owner of its use and possession.

Sheriffs have not such an ownership of the tax books, as makes them incapable of committing the crime of embezzlement, under section 1205, Kentucky Statutes.

Even if sheriffs had such an ownership, or interest at common law, as to render them incapable of committing this offense at common law, the statute abrogates the common law, and it would have no application to the case at bar.

### AUTHORITIES CITED.

Sec. 1205, Kentucky Statutes; sec. 4145, Kentucky Statutes; Commonwealth v. Bodley, 17 Ky. Law Rep., 561; Lewis v. Commonwealth, 11 Ky. Law Rep., 421; Snapp v. Commonwealth, 82 Ky. P., 173, *et seq.*, Robertson's Crim. L. & Procedure, vol. 1, pp. 648-49.

J M. NICHOLS & SON, AND JOHN W. RAY, ATTORNEYS FOR APPELLEE.

We submit that there are two fatal defects in the indictment:

1. The statute (sec. 1205) does not reach a tax collector.

2. There is no allegation of a demand and refusal to pay to any properly authorized person.

### AUTHORITIES CITED.

Snapp v. Com., 82 Ky., 185; A. & E. Ency. of Law, vol. 10, (2d ed.) p. 985, 1005; Com. v. Starns, 2 Met., 343; Stone v. Com., 46 S. W., 721; Owens v. Ballard County Court, 8 Bush, 611; Com. v. Lewis, 12 S. W., 266; Kentucky Statutes, secs. 1205, 4145.

OPINION OF THE COURT BY CHIEF JUSTICE GUFFY—REVERSING.

The grand jury of the county of Carlisle returned an indictment against F. P. Fisher charging him with the offense of embezzlement. The specifications in the indictment in

apt language charges that the said Fisher, in said county, on the 28th of October, 1901, and before the finding of this indictment, was, during and for the years of 1898, 1899, 1900, and 1901, the duly elected and qualified acting sheriff of Carlisle county, and that he was elected to said office and that as sheriff he had the control, custody, and distinct possession of the money and funds belonging to said county of Carlisle, under the duty and trust to keep said money and funds, to pay and apply the same as ordered, and upon the orders of the fiscal and county court of said county. It is further alleged in the indictment that the fiscal court, in October, 1898, levied an ad valorem tax of 40 cents on each $100 worth of taxable property in said county, and a poll tax of 50 cents on each male citizen of the age of 21 years, and a poll tax of $1 upon each male citizen between the ages of 18 and 50 years, for the purpose of defraying the expenses of the county, and paying claims allowed by said court, and for road and bridge purposes; that the levy in all amounted to the sum of $10,585.40, after deducting the delinquent list allowed by said fiscal court, and the sheriff's commission for collecting same, and all other credits to which said sheriff was entitled. It is further alleged that in October, 1899, the said fiscal court levied an ad valorem tax of 42 cents on each $100 worth of property in said county, and a similar poll tax was levied for similar purposes, and after deducting the delinquent list allowed by said fiscal court, and deducting the sheriff's commission for collecting same, and all other credits to which the sheriff was entitled, amounted to the sum of $10,637.60. making a total of taxes levied by said court in the years 1898 and 1899 for both county and bridge purposes, exclusive of delinquent lists and sheriff's commission and all other credits to which said sheriff was entitled, of the

sum of $21,223.   It is further alleged that said taxes were
duly levied and certified to said Fisher, sheriff, as aforesaid,
by the fiscal court for collection, and that said Fisher did
receive the tax books of and for each of the aforesaid
levies, and did collect, receive, and have in his possession
the taxes levied as aforesaid, amounting, as aforesaid, for
the two years aforesaid, to the sum of $21,223, which money
belonged to and was for the use of the county of Carlisle,
and was in the possession of said Fisher, sheriff, aforesaid,
under the trust and duty to keep, pay, and deliver upon the
order and direction of the said fiscal and county courts of
Carlisle county.   It is further alleged as follows:   "That
said F. P. Fisher, sheriff, as aforesaid, having collected
said tax money, and having the same in his possession as
aforesaid under the trust and duty aforesaid, did, in viola-
tion of said trust and duty, willfully and unlawfully em-
bezzle, misapply, misappropriate, conceal, use, loan, and
otherwise wrongfully and fraudulently dispose of the sum
of $8,868.97 of said money so belonging to said county as
aforesaid, for his own use and purposes, with the intent
to deprive the said county of Carlisle of same, and for his,
the said Fisher's benefit; against the peace and dignity of
the Commonwealth of Kentucky."   The appellee entered
a demurrer to the indictment, which was sustained by the
court, and said indictment was dismissed absolutely; to all
of which plaintiff objected and excepted, and prayed an ap-
peal to the court of appeals, which was granted.

   The indictment was evidently found under the provision
of section 1205, Kentucky Statutes, which reads as follows:
"If any person having the control, custody or distinct pos-
session of any money, bank notes, county, city or town
bonds, or Kentucky State bonds, or United States bonds,
or treasury notes, legal tender notes, promissory notes,

property, effects, or other movable thing of value belonging
to or for the use of State, or of any county or district of a
county, or of any municipal corporation, and under any trust
or duty to keep, return, deliver, cancel, destroy or specific-
ally apply the same, or any part thereof, shall, in violation
of such trust or duty, wilfully misapply, misappropriate,
conceal, use, loan or otherwise wrongfully and fraudulent-
ly dispose of such money, bank notes, county, city or town
bonds, State bonds, United States bonds or treasury notes,
legal tender notes, promissory notes, property, effects or
other movable thing of value or any part thereof, for his
own purposes or use of another, with intent to deprive the
owner or authority of the same, or of any part thereof,
for the benefit of the wrong-doer or of any other person,
such person so offending shall be confined in the peniten-
tiary not less than one nor more than ten years." It is
contended for appellee, first, that the indictment is insuffi-
cient, for the reason it does not aver that there had been
a settlement with the appellee, or any demand or direction
to him to pay over the amount of money in his hands; and
we are referred to the case of Com. v. Lewis (11 R., 421)
(12 S. W., 266). It seems from that case, which is very
brief, that Lewis was county judge of Harlan county, and
as such had received $1,000, the price of vacant land in
Harlan county, and was charged in general terms in the
indictment that he had appropriated the money for his own
use and benefit. This court held that such a charge was
insufficient. The court further said: "It seems to us to
make out the offense, it is necessary to charge not merely
that he had used the money for his own benefit, but had
failed and refused to account for or pay it over at the
time, in the manner, and for the purpose required by law;
for while he stands bound and ready to do so when legally

required there can not be an embezzlement." From the meager report in the case supra, we are not authorized to say that the charge in the indictment was similar to that in the indictment in the case at bar. Moreover, we presume that the county judge of Harlan county had no right to pay out that money for any purpose except under the special order of the court, and it does not appear that he was charged with converting the money to his own use for the purpose of defrauding the county; hence we conclude that the case is not an authority in this case. The case of Clark v. Com. (16 R., 703) (29 S. W., 973), is also cited. In that case reference was made to some authorities holding that, where a person was engaged in a general collecting business, and entitled to take his commission out of the money so collected, he could not be convicted of embezzlement, although he used the entire sum for his own benefit. Clark had been indicted for embezzling money collected for a sewing machine company. This court affirmed the judgment. It seems from that case that Clark was entitled to 5 per cent. for collecting, and yet he was held guilty if he in fact embezzled the money so collected. Many authorities draw a distinction between an agent or a party who collects money, and for his compensation is to be paid a certain per cent. by his employer, and that of an agent who collects and is entitled to retain his commission out of the sum collected. It seems to us such distinction is not well founded, although it was referred to without being condemned in the case supra. Stone v. Com. (104 Ky., 220) (20 R., 478) (46 S. W., 721), is also relied on by appellee. Stone was indicted for the embezzlement of funds of the National Life Association of Hartford, Conn. It appears from the opinion that Stone, at the suggestion

of Gathright, an agent of said company, aided in procuring a life insurance policy, part of which commission was going to Gathright and a part to Stone, and 30 per cent. to the company. Stone left the country, and the money was never sent. The court said: "It is clear, we think, that appellant was not, within the meaning of the statute, the agent of the Hartford Company, having in his possession, care, or management, money, bonds, notes, or effects belonging to that company. The company never had him employed and heard nothing of him, beyond seeing his name on the application as solicitor." It is true the court, in discussing the case, made some reference to 6 Am. & Eng. Ency. Law, referred to in the case of Clark. The statement is as follows: "The rule seems to be well settled that in all cases where one receives money, a portion of which belongs to himself as a commission on the whole amount, he is not guilty of embezzlement, though he converts the whole to his own use." It is important to notice that the indictments in both the cases just referred to were found under and by virtue of section 1202, which is a different statute from the one under consideration at bar; and, so far as we are advised, the decisions of other States relied on by appellee were cases being prosecuted under a statute similar to section 1202. We do not think the case of Snapp v. Com., 82 Ky., 185 (6 R., 34), is at all similar to the case under consideration. The opinion in that case, however, does show that Ferguson, a back tax collector, had been found guilty of embezzlement, and had been pardoned by the Governor. We do not think that section 4145, Kentucky Statutes, has any bearing upon the case at bar. That statute evidently was enacted to prevent sheriffs from taking the county levy and applying it to the payment of revenue, or vice versa. It will be seen from section 1205

that the main object or purpose of the act was to punish any person who, having the control, custody, or distinct possession of any money or other articles enumerated, belonging to or for the use of the State or any county, etc., under any trust or duty, to keep, return, deliver, cancel, destroy, or specifically apply the same or any part thereof, shall in violation of such trust or duty willfully misapply, misappropriate, conceal, use, loan or otherwise wrongfully and fraudulently dispose of such money, etc., or any part thereof, for his own purpose or use of another, with intent to deprive the owner, etc., of the same, or any part thereof, by confinement in the penitentiary, etc. It will thus be seen that the gravamen of the offense is the willful and wrongful appropriation or use of the money for his own use, purpose, or that of another, with the intent to deprive the owner of the same, or any part thereof.

The indictment is clear and explicit in averring all the facts necessary to constitute the offense denounced by the statute, and it has never been held that a demand for the restoration of stolen property was necessary in order to secure a conviction. The taking with fraudulent and felonious intent of property, and to convert it to the use of the taker, and permanently deprive the owner thereof has always been held to constitute the offense of larceny. So it would seem that under this statute the wilful and wrongful taking and converting money of the county to the use of the defendant, with the intent as set out in the indictment, constituted the completed crime of embezzlement. Hence it was not necessary to allege a failure to pay over money due the county, or allege any demand, or that any order of court had been made to that effect. If defendant in fact paid over the money on demand, the same may be shown in b    "  'l be true that the

sheriff was entitled to 6 cents out of every dollar collected, yet the fact remains that the other 94 cents was the money belonging to the county, which he held in trust, and under a duty to pay over, and that duty rested upon him until he had discharged it. The statute in question was manifestly made for the protection of the people of the State, counties, etc., and must have been intended to apply to sheriffs and other collecting officers who embezzled public funds that came into their hands; for we can conceive of but little property or money belonging to a county or district except such as would be collected by collecting officers. We are not of opinion that the decisions had under section 1202 and similar statutes shed any light upon the question under consideration in this case.

The appellant, among other authorities, refers us to Com. v. Bodley (17 R., 561) (31 S. W., 463). Bodley was a deputy clerk, and was indicted for embezzlement. The indictment was found under section 1205, the same as the one at bar. The court below sustained a demurrer to the indictment, and the Commonwealth appealed. The indictment substantially charged that Bodley was the deputy county court clerk under Jones, clerk of the county court of Campbell county, and thus received and had custody of certain sums of money from sundry persons in payment of license fees for the retail of spirituous, vinous, and malt liquors, for keeping billiard and pool tables for hire, tax on deeds, mortgages, and other recordable instruments of writing left with him for record, each and all due and owing the State by the persons paying the same; that it was paid under a trust to keep and pay the same over to Jones, clerk of the Campbell county court, and by Jones to pay the same to the auditor of the State of Kentucky. It was further alleged, in substance, that the defendant did

Commonwealth v. Fisher.

feloniously and willfully, and with the intent to deprive the State thereof, and to convert the same to his own use and for his own benefit, misappropriate, use, and fraudulently dispose of the money, and failed and refused to deliver or pay same to Jones. The court, in discussing the case, said: "The custody of the money, the ownership in the State, the trust to keep and deliver the money, the misappropriation and use of the money for himself and for his own benefit, and that it was done with the intent to deprive the State thereof, are distinctly and fully alleged. A deputy clerk of the county court can commit the offense denounced under the statute the same as could the clerk. Under the law, the deputy county court clerk was authorized to receive the money embezzled. The judgment is reversed, with directions to overrule the demurrer." It seems that this decision is conclusive of the case at bar. It will be seen from section 4242, Kentucky Statutes, that the county clerk is allowed 5 per cent. commission on such taxes collected as mentioned in the indictment. See, also, sections 4145 and 2287. It results from the foregoing that the circuit court erred in sustaining the demurrer to the indictment and dismissing the same.

The judgment appealed from is reversed, and cause remanded, with directions to the court below to overrule the demurrer to the indictment, and for proceedings consistent herewith.

Whole court sitting, except Judge White.

Petition for rehearing by appellee overruled.