# DECISIONS

## OF THE

# COURT OF APPEALS OF KENTUCKY

## APRIL TERM, 1910.

CASE 1.—PROSECUTION AGAINST HIRAM SMEDLEY FOR EMBEZZLEMENT.—April 21, 1910.

## Smedley v. Commonwealth

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Defendant convicted and appeals.—Reversed.

1. Embezzlement—Nature of Offense—Embezzlement is a Statutory crime.

2. Embezzlement—Indictment—Requisites.—An indictment for embezzlement, which alleged that accused received and had in his custody a specified sum of money which was the property of the state, that the money was collected by him as county clerk under a duty and trust imposed by law to receive and pay it to the Auditor of state, that instead of paying it over to the Auditor he converted the money to his own use, fraudulently and with the felonious intent to deprive the state thereof, charged embezzlement under St. 1909, section 1205, punishing the misappropriation of property of the state, though it did not give the names of any of the persons of whom accused collected money for the state, nor aver on what account, nor the amounts received of them.

3. Indictment and Information—Bill of Particulars.—Where the facts alleged in an indictment, alleging that accused embezzled money of the state, received by him as clerk of the county court of the county, for delinquent taxes and taxes

on mortgages, etc., were such as must be presumed to have been known to him, the refusal to require a bill of particulars, giving the names of the persons from whom accused collected the money and the amount collected of each and on what account, was not ground for reversal, though it would have been better to have required a bill to be filed.

4. Criminal Law—Appeal—Review—Discretion of Trial Court. —The action of the trial court in granting or refusing a bill of particulars is subject to review where the trial court abused its discretion.

5. Criminal Law—Continuance—Grounds—Unpreparedness for Trial.—Where accused showed that he had been confined in a lunatic asylum without opportunity to consult his counsel, and without ability to assist in the case, and that during the short interval between his discharge from the asylum and the beginning of the trial his counsel were so constantly engaged in the trial of other cases as to render it impossible to give his case proper attention, the refusal to grant a continuance on the ground of unpreparedness for trial was erroneous.

6. Criminal Law—Courts—Jurisdiction—"Criminal Term"—"Civil Term."—St. 1909, section 965, providing for criminal terms of the circuit court of a county, and for civil terms thereof, divides the circuit court of the county into criminal and civil terms, and while the one circuit judge of the judicial district embracing the county presides at both the criminal and civil terms, he is without jurisdiction to try a criminal case at a civil term, or to try a civil action at a criminal term, the words "criminal term" applying to a term of court at which indictments are found and returned, and at which persons are tried for crimes and other penal offenses, and the words "civil term" applying to a term at which civil business is disposed of, and controversies cognizable at law or in equity are litigated.

7. Criminal Law—Courts—Jurisdiction.—Where a criminal case was continued at a criminal term of a circuit court of a county having criminal and civil terms, the case could not be called for trial until the next criminal term, and the court was without jurisdiction to try the case at the intervening civil term.

8. Criminal Law—Evidence—Insanity—Admissibility.—Where accused relied on insanity at the time of the commission of the crime, and there was evidence that during the time of the commission of the offense he was addicted to the use of

Smedley v. Commonwealth.

drugs impairing, if not destroying, his mind, the inquest of lunacy, held at the same term of court at which the trial occurred, was admissible.

CN PETITION FOR REHEARING.

9.   Statutes—Special Law—Terms of Court.—Ky. St. section 965, in so far as it undertakes to divide the terms of the circuit court, in McCracken county into civil terms and criminal terms, is violative of Const. section 59, subsec. 1, providing that the General Assembly shall not pass local or special acts to regulate the jurisdiction or practice of the courts of justice.

10.  Statutes—Effect of Partial Invalidity—Terms of Court.—The invalidity of a provision in Ky. St. section 965, dividing the terms of court in McCracken county into civil terms and criminal terms, does not affect the validity of any other part of the act, or alter the number of terms that may be held in that county, but makes each term a general term at which both civil and criminal cases may be disposed of.

SAM H. CROSSLAND and HENDRICK & CORBETT for appellant.

JAS. BREATHITT, attorney general, TOM B. McGREGOR, assistant attorney general and JOHN G. LOVETT for Commonwealth.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The appellant was convicted in the court below of the crime of embezzlement, and his punishment fixed at confinement in the penitentiary for a term of six years, under an indictment found by the grand jury of McCracken county. It appears from the indictment that the moneys, aggregating $750, he was charged to have embezzled, belonged to the state, and were received by him as clerk of the McCracken county court from various persons owing them; that the sums thus received by appellant consisted of delinquent taxes, and taxes on mortgages, deeds and licenses, which the laws of the state made it his duty

as county clerk to collect and pay to the Auditor of the state. The several grounds urged in the circuit court in support of appellant's motion for a new trial are also relied on for a reversal of the judgment of conviction, but only such of them as we regard material will be discussed in the opinion.

Appellant's first contention is that the indictment is fatally defective, and that the trial court erred in overruling his demurrer to it. Embezzlement is a statutory crime and the indictment against appellant was returned under section 1205, Ky. St. (Russell's St. sec. 3373), which provides: "If any person having the custody, control or distinct possession of any money, bank notes, county, city or town bonds, or Kentucky state bonds, or United States bonds, or treasury notes, legal tender notes, promissory notes, property, effects or other movable thing of value belonging to or for the use of the state, or of any county or district of a county, or of any municipal corporation, and under any trust or duty to keep, return, deliver, cancel, destroy, or specifically apply the same or any part thereof, shall, in violation of such trust or duty, willfully misapply, misappropriate, conceal, use, loan or otherwise wrongfully and fraudulently dispose of such money, bank notes, county, city or town bonds, state bonds, United States bonds or treasury notes, legal tender notes, promissory notes, property, effects or other movable thing of value or any part thereof, for his own purposes or use of another, with intent to deprive the owner or authority of the same, or of any part thereof, for the benefit of the wrongdoer or of any other person, such person so offending shall be confined in the penitentiary not less than one nor more than ten years."

The essential facts constituting the crime defined by the section, supra, are charged in the indictment,

viz.: (1) That appellant received and had in custody $750 in lawful money of the United States; (2) that this money was the property of the state of Kentucky; (3) that the money was collected by appellant as county clerk under a duty and trust imposed by law to receive and pay it to the Auditor of the state; (4) that, instead of paying it over to the Auditor, appellant appropriated and converted the money to his own use; (5) that such appropriation and conversion of the money by appellant was fraudulently done with the felonious intent to deprive the state thereof. Appellant's counsel particularly object to the failure of the indictment to give the names of the persons, or any of them, of whom appellant collected money for the state, on what account, or the amounts received of them, respectively. The same objection, with others, seems to have been made to the indictment in Commonwealth v. Bodley, 31 S. W. 463, 17 Ky. Law Rep. 561, but this court nevertheless held the indictment good, and reversed the judgment, because the trial court had erred in sustaining a demurrer to it. Roberson's Crim. Law and Procedure, sec. 461; Com. v. Fisher, 113 Ky. 491, 68 S. W. 855; Roland v. Commonwealth, 119 S. W. 760, 134 Ky. 170. It is our conclusion that the indictment is good; therefore the trial court committed no error in overruling the demurrer.

Appellant also complains that the trial court overruled his motion to compel the filing by the commonwealth's attorney of a bill of particulars, giving the names of the persons from whom appellant collected the moneys he was charged to have embezzled; the amount collected of each and on what account. It would perhaps have been well for the court to have sustained the motion, and we advise that the common-

wealth's attorney be required to furnish the bill of particulars before the case is again tried, but we are unwilling to hold that its refusal to do so was such error as will justify a reversal.  The facts alleged in the indictment as constituting appellant's guilt were such as must be presumed to have been known to him, for they were wholly matters of which the law required him to keep a record, and no one knew or could know better than he whether funds he received for the state had by him been misappropriated or converted to his own use, and if so, how much and from whom received.  As said by this court in the case of Commonwealth v. Chesapeake & Ohio Railway Company, 128 Ky. 749, 110 S. W. 253, 33 Ky. Law Rep. 92: "There is no inflexible rule as to the class of cases in which a bill of particulars will be granted, but it rests within the sound discretion of the court, to be exercised only in furtherance of justice.  But the rule is equally well established that a party will not be obliged to furnish facts already known to his adversary, nor when the means of ascertaining the facts are equally accessible to both parties."  Bailey v. Com., 130 Ky. 301, 113 S. W. 140; 22 Cyc. 372.  As in other matters of judicial discretion, the action of the trial court in granting or refusing a bill of particulars is reviewable by this court, and subject to correction if abused, but we can not in this case say that such discretion was abused.

We feel constrained, however, to sustain appellant's third contention that the trial court erred in refusing him a continuance of his case.  We rest this conclusion upon two grounds, either of which entitled him to the continuance: (1) That appellant was forced into trial within a few days of his discharge from the Western Kentucky Lunatic Asylum, and

without opportunity to himself or counsel to properly prepare his defense. (2) That he was tried at and during a civil term of the McCracken circuit court, which was and is without jurisdiction to try criminal cases, and consequently could not legally try appellant. The affidavits of appellant and counsel filed in support of the motion for a continuance sufficiently presented the facts showing his unpreparedness for trial, which were that while confined in the asylum for unsoundness of mind he was separated from and could not consult with his counsel; nor was he then mentally capable of being of any assistance to himself or them in preparing his case for trial; and that during the brief interval between his return to Paducah from the asylum and the beginning of the trial, his counsel were so constantly engaged in the trial of other cases in the McCracken and Graves circuit courts and the United States District Court of Paducah, as to render it impossible for them to give appellant's case the attention it deserved or properly prepare it for trial, either in the matter of informing themselves as to the law or facts thereof, particularly such as appertained to his defense. The affidavits in question also presented appellant's objection to the jurisdiction of the court to try him during the civil term, and this question we will now consider. As originally enacted, section 965, Ky. St. (Carroll's Ed. 1903); provided for the holding of six terms of court each year in McCracken county as follows: "McCracken county, at Paducah, three terms on first Mondays in April, September and December, eighteen juridical days each; and three terms, first Monday in January, forty-eight juridical days; fourth Monday in April, and third Monday in October, thirty-six juridical days each." March 19, 1908, section 965 was

amended, with respect to the courts of McCracken county, as follows: "McCracken county, at Paducah, on the first Monday in January, criminal term, eighteen days; first Monday in February, civil term, forty-eight days; third Monday in April, criminal term, eighteen days; third Monday in May, civil term, thirty-six days; fourth Monday in September, criminal term, eighteen days; fourth Monday in October, civil term, thirty-six days." Section 95, Ky. St. (Carroll's Ed.) 1909.

It will be observed that in the section as first enacted the word "criminal" is not used with respect to any term of court therein provided for Mc-Cracken county, but that in the same section as amended it appears three times, and in each instance preceding the word "term"; the terms in connection with which it is used being the shorter terms required to be held in McCracken county. While the word "civil" did not appear in the section as first enacted, it is found in the section as amended, wherein it is made to precede each of the terms of longer duration, which it provides shall be held in the county.

The words "criminal term" can have but one meaning; they apply to a term of the circuit court at which indictments are found and returned by a grand jury, persons are tried for crimes and misdemeanors, and other business relating solely to the administration of the criminal and penal laws is transacted.

The meaning of the word "civil," as applied to a term of court, is equally well understood. A "civil term" of the circuit court is one at which civil business is disposed of, and controversies affecting the rights of persons and property, whether cognizable

at law or in equity, are litigated and adjudicated according to the rules of civil procedure.  So, we think it clear the Legislature in amending the section, intended to divide the circuit courts  of  McCracken county into three criminal and three civil terms each year; and while the one circuit judge of the judicial district embracisg McCracken county  presides at both the criminal and civil terms of the circuit court of that county, he is without power or jurisdiction to try a criminal case, empanel a grand jury, or dispose of other matters pertaining to the administration of the criminal laws, at or during a civil term of his court, or to try a civil action or proceeding at or during a criminal term of his court.  Such a separation of the criminal and civil business of the McCracken circuit court can result in no harm to either the criminal or civil litigant, as there will be three terms for trials and other proceedings under the criminal and penal laws and three terms for the trial of civil cases and proceedings, held each year, as required by the Constitution of the state and section 965, Ky. St.

It appears that at the criminal term of the McCracken circuit court held in September, 1909, appellant's case was continued.  This to him meant, and such was its legal effect, that his case would not again be called for trial until the next criminal term of the court which would begin on the first Monday in January, 1910, and the court had no right, and was without jurisdiction, to try appellant at the next civil term of the court which began in October, 1909. If, as claimed in the brief of appellant's counsel, appellant's trial affords the only instance of the trial of a criminal case at a civil term of the McCracken circuit court since the division of the  court  into

criminal and civil terms, it would seem that the judge of that court had, until appellant was tried, given to section 965 the same construction we now give it. If any legal reason existed for trying appellant before the January, 1910, criminal term of the court, a special criminal term might have sooner been called and held for that purpose, as provided by section 964, Ky. St.

We are further of opinion that appellant's complaint of the exclusion by the court from the consideration of the jury of the record containing the writ, judgment, and other proceedings in the inquisition of lunacy offered in evidence by appellant to show that he had properly been found and adjudged of unsound mind shortly before his trial is well founded, for the exclusion of this evidence was error.

It appears that the inquest was held at the same term of the court at which appellant's trial under the indictment occurred, and that from the time of the inquest until within a few days of his trial he was confined in the lunatic asylum at Hopkinsville; his return to the custody of the jailer of McCracken county having been ordered by the court upon a written statement from the superintendent of the asylum that his mind had been restored. His principal defense was that he was of unsound mind at the time of committing the crime charged in the indictment, and much of the evidence introduced in his behalf tended to show that throughout his term of office as county clerk, and down to the time of the trial, he was greatly addicted to the use of morphine or other drugs by which his mind was much impaired, if not destroyed. Thus it will be seen that the inquest of lunacy furnished an important link in the

chain of evidence upon which rested his main defense.

It was held in the case of Montgomery v. Com., 88 Ky. 509, 11 S. W. 475, that: "Evidence of insanity both before and after the criminal act may be given to the jury for the purpose of enabling them to determine whether or not the same conditions of mind existed at the time the act was committed; but no legal presumption arises from the proof of previous, or after, insanity that the person was insane at the time he committed the criminal act; but the jury may draw such inferences of fact from these conditions as they may deem proper." Moore v. Com., 92 Ky. 630, 18 S. W. 833.

In Clark's Ex'r v. Trail's Adm'rs, 1 Metc. 35, it was held that an inquest of lunacy, although conclusive evidence of the condition of mind of the party at the date of the inquest, is only prima facie evidence of his condition at any subsequent period: being a mere presumption it may be repelled by oral testimony.

In Wigmore on Evidence, section 1671, it is said: "There is not, therefore, and never has been, any doubt as to the admissibility of an inquisition of lunacy, in any litigation whatever, to prove the person's mental condition at the time. The only controversy has been whether it is conclusive, i. e., whether it is to be regarded as a judicial proceeding and a judgment in rem, binding upon all persons whatsoever. There also arises for it the question whether the person's mental condition at the time of the inquisition is evidence of his condition at the time in issue; but this is merely a question of the relevancy of the fact evidenced by the inquisition and not of the admissibility of the inquisition." Sec-

tion 233, Wigmore on Evidence; Greenleaf on Evidence, section 14 (16th Ed.). Manifestly the exclusion of the record in question was prejudicial to the appellant.

Appellant also objects to the instructions given by the court, but the objection is, we think, without merit. We are of opinion, however, that so much of instruction No. 4 as was not embraced in instruction No. 3 should have been included in instruction No. 3, and this the court will do upon a retrial of the case.

For the reasons indicated, the judgment is reversed and case remanded for a new trial consistent with the opinion.

EXTENDED OPINION BY JUDGE CARROLL ON PETITION FOR REHEARING.

In the opinion it is held that as the Legislature by the act of 1908, now section 965 of the Kentucky Statutes, provided that the circuit court of McCracken county should hold three civil terms and three criminal terms during each year, that it is not competent to try a criminal case in McCracken county at a term designated as a civil term or a civil case at a term prescribed in the act for the trial of criminal cases.

Upon a reconsideration of so much of the opinion as relates to this point, we have concluded that the act of 1908, in so far as it undertakes to divide the terms of the circuit court to be held in McCracken county into civil terms and criminal terms, is in violation of section 59, subsec. 1, Const. This subsection, in connection with the preceding clause, reads: ''The General Assembly shall not pass local or special acts concerning any of the following subjects or for any

of the following purposes, namely: To regulate the jurisdiction, or the practice, or the circuits of the courts of justice, or the rights, powers, duties or compensation of the officers thereof; but the practice in circuit courts in continuous session may by a general law be made different from the practice of circuit courts held in terms.'' The Legislature in providing that there should be held in McCracken county civil terms and criminal terms evidently intended, as said in the opinion, to divide the circuit court of Mc-Cracken county into three criminal and three civil terms each year, the legal effect of which, if the act was valid, would be to deprive the court of power or jurisdiction to try criminal cases, impanel a grand jury, or dispose of any other matter pertaining to the administration of the criminal law at or during a civil term of the court, or to try a civil action or proceeding at or during a criminal term of the court. In thus undertaking to divide the terms into civil and criminal terms the Legislature undertook to and did enact a local and special act, applicable alone to McCracken county, regulating the jurisdiction of the circuit court in that county; and this it was without power to do. Although it would not be advisable and would create much confusion, in the trial and disposition of cases, it would yet be competent for the Legislature to enact a general law providing that all circuit courts in tlhe state, except those in continuous session, might hold terms for the trial of civil cases and terms for the trial of criminal cases. But it is without authority to single out one or more counties in which courts of continuous session are not held and prescribe that in such county or counties there shall be held civil terms and criminal terms.

This conclusion does not affect the validity of any other part of the act, or alter or disturb the number of terms of the circuit court that may be held in McCracken county, but at each of the terms civil and criminal cases may be heard and disposed of. In other words, each term is a general term of the circuit court at which any business that the circuit court may have jurisdiction of can be heard and determined.

So much of the opinion as is in conflict with the views herein expressed is withdrawn, and the petition for rehearing is overruled.