## Barrett, et al., composing The State Board of Charities and Corrections v. Commonwealth, on Relation, etc.

(Decided December 21, 1923.)

### Appeal from Christian Circuit Court.

1. Insane Persons—Statute Held to Apply Only to Civil Rights of Persons and Property.—Ky. Stats., sections 272a-1-272a-42, were intended to apply only to civil rights of persons and property, not to inquests growing out of criminal cases, which are regulated by the common law and the Criminal Code.

2. Criminal Law—Insanity a Defense at Common Law.—At common law a person was not chargeable with a crime committed by him while insane, and this defense could be made on the criminal trial and heard and determined by the jury trying that case.

3. Criminal Law—Proceedings where Insanity Occurs After Commission of Offense.—At common law, if person charged with crime became insane after the commission of the offense but before or after arraignment or after verdict, or even after judgment, the attention of the court being called to that fact, it would suspend proceedings until he was restored.

4. Jury—No Jury Trial of Insanity Necessary After Judgment.—At common law, if attention of court was called to fact that one convicted of crime was insane, the right of a jury trial on the issue of sanity was not inherent, though it was usual to impanel a jury and summarily try the issue.

5. Criminal Law—Provisions of Criminal Code as to Inquests Not Repealed by Statute.—Ky. Stats., section 272a, relating to the commitment and segregation of feeble-minded, did not repeal Criminal Code of Practice, sections 156, 287, 294-296, relating to insanity of persons charged with or convicted of crime.

6. Criminal Law—Inquest as to Insanity May be Held by Warden of Penitentiary.—Warden of penitentiary in custody of one to be executed for crime may hold an inquest if he is satisfied there are reasonable grounds to believe the condemned insane, in view of Criminal Code of Practice, sections 156, 287, 294-296; Ky. Stats., section 1137 1-10.

7. Criminal Law—Governor May be Required to Suspend Sentence Upon Verdict of Insanity, and Resort Made to Courts if Refused.—

Though no statutory authority is given warden of penitentiary to suspend sentence where he has held an inquiry and it has been determined that one condemned to death is insane, he may request such suspension of the Governor, and if the Governor refuses the request the courts may act in the premises, in view of Criminal Code of Practice, sections 294-346.

8. Criminal Law—Superintendent of Asylum May Determine Sanity of Criminal Restored and Deliver Him Over to Warden.—Where one sentenced to death has been declared insane, the superintendent of the asylum may declare sanity of criminal restored, under Ky. Stats., section 253, without approval of the warden other than that implied by his acquiescence, in view of section 272a-36, and an inquest in circuit court is unnecessary, though not unauthorized.

HUGGINS & OLDHAM, H. M. DENTON and BREATHITT & BREATHITT for appellants.

THOS. B. McGREGOR, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

In a trial in the Jefferson circuit court, Frank Thomas was convicted of murder and his punishment fixed at death. On appeal to this court that judgment was affirmed in an opinion reported in 196 Ky. 139.

Thereafter in compliance with section 1137, Kentucky Statutes, he was conveyed to the state penitentiary at Eddyville to await the execution of the sentence. The Governor fixed the date for his execution at February 25, 1923.

A few days prior to that date his attorneys filed in the Lyon circuit court clerk's office a petition in accordance with section 272a, Kentucky Statutes, alleging that he was then insane and asking for an inquisition to determine that matter. Subsequent proceedings were had in accordance with other provisions of that chapter and the prayer of the petition, the inquest being held by the county judge of Lyon county.

The jury found Thomas to be a person of unsound mind, and by the judgment of that court he was taken from the custody of the warden of the state penitentiary at Eddyville and committed to the Western State Hospital at Hopkinsville in Christian county.

On the 24th day of May the Commonwealth of Kentucky on relation of the attorney general filed a petition in the Christian circuit court against the members of the

State Board of Charities and Corrections alleging all the foregoing facts, and further stating that he had information that Frank Thomas had been restored and was then of sound mind and of sufficient mentality to know right from wrong and to realize the consequences of his acts and know and realize the purpose for which the judgment of the Jefferson circuit court, criminal division, was being carried into effect.

Summons were served upon the members of the board and upon Frank Thomas. On June 6th, being the 6th day of the June term of the Christian circuit court, the other defendants and Thomas, through his attorneys, filed a special demurrer to the jurisdiction of the court, which was overruled and exceptions taken.

On the 9th day of that term and over the objections of the appellant's attorneys, the relator filed an amended petition, in which he alleged that the superintendent of the asylum in which Frank Thomas was incarcerated, had on the 24th day of May, 1923, filed a report with the State Board of Charities to the effect that he (Frank Thomas) still retains his mental vigor and is not insane. The original report was filed as an exhibit with that pleading. It was quite comprehensive, detailing the conduct and conversations of Thomas while a ward in the asylum; the kind and character of examinations made by the different members of the staff and their observations; also a diary of the physician in charge as to his daily transactions with the patient; the family history so far as they were able to learn it and the final diagnosis which was, "not insane," the report being signed by the superintendent, assistant superintendent and the attending physicians, constituting the entire hospital staff.

Subsequent to this on the 13th day of the term an inquisition was had, and a majority verdict signed by nine members of the jury was returned, finding the defendant to be of sound mind. A judgment was entered in accordance with the verdict, and further directing that Thomas be returned to the Eddyville penitentiary and replaced in the custody of the warden thereof to await the execution of the sentence of the Jefferson circuit court. Thomas entered a motion for a new trial and upon it being overruled has appealed to this court.

The grounds relied upon for reversal are: (1) error in order overruling special demurrer to the jurisdiction of the Christian circuit court; (2) error in instruction authorizing a majority verdict.

The direct issue relates to proceedings for restoration, but for a correct understanding of this question we deem it essential to also consider the law relating to original inquests.

As to the first ground it is insisted that as the Lyon county court had held the first inquest it acquired exclusive jurisdiction to hear and determine the question as to restoration of appellant's mind, and the cases of Upton v. Bush, 136 Ky. 102, and Com. v. Redd, 196 Ky. 798, are cited as establishing that rule.

Upton had been found incompetent to manage his estate and a committee appointed therefor who was exercising the trust under the orders of the court. He sought a restoration under the provisions of section 2160, Kentucky Statutes, and in referring to jurisdiction the court said:

> "The court which found the person to be of unsound mind is the tribunal that should open up the judgment in the case for the person is a ward of that court and his estate is in its custody till the judgment is vacated."

Under a similar state of facts this language was quoted with approval in the Redd case; but it must be remembered that in those cases the courts were treating with their own judgments as affecting matters directly under their control; that having acquired a continuous jurisdiction of the ward and his property such jurisdiction could not be interfered with by any other tribunal.

At the time those decisions were rendered proceedings to establish unsoundness of mind generally were regulated by the provisions of chapter 67, sections 2147-71, Kentucky Statutes. Inquests were authorized for incompetency by section 2155, for other unsoundness of mind by section 2162, and for restoration by 2160, each requiring a jury to pass upon the issues of fact.

That chapter was repealed by the enactment of section 272a-42, Kentucky Statutes, under which all inquests are now held in the circuit court, but in vacation before the circuit judge, or in his absence before the county judge. The proceedings may be begun by any reputable person either from knowledge or from information and belief. An elaborate procedure is mapped out and when followed it is incumbent upon the court to hold the inquest and a jury may be demanded or waived by the

parties. This applies to original inquests, no provision being made for a judicial tribunal to inquire as to the restoration of mind of a person after he has been adjudged of unsound mind.

A consideration of these statutes clearly indicates that they were intended to apply only to civil rights of persons and property and not to cover inquests growing out of criminal cases which are based on entirely different principles and which are regulated by the common law and the Criminal Code.

At common law a person was not chargeable with a crime committed by him while insane, and this defense could be made on the criminal trial and heard and determined by the jury trying that case. If he became insane after the commission of the offense either before or after arraignment or after a verdict, or even after judgment, the attention of the court being called to that fact the court would suspend proceedings until he was restored. This was not a defense, but it was thought while in such condition before verdict the defendant would be unable to make proper defense, and that after verdict but before sentence, he might be able, *if sane,* to show some reason why judgment should not be pronounced; even after judgment the law in its humanity would not inflict punishment upon one who at the time was incapable of understanding the reason therefor, this not on account of any legal right, because none such remained and his life was forfeited, but as an act of mercy and clemency.

In such cases if the court was satisfied that the defendant was insane the reprieve was granted. If satisfied that he was not insane it was refused without reference to a jury in either instance, but in cases of doubt, while the right of a jury trial was not inherent, it was usual to impanel a jury and summarily try the issue. Cooley's Blackstone, vol. 2, page 1254, and notes; 1st Hawkins P. C. 2, and notes; 4 Blackstone, page 396; Bulger v. People, 61 Col. 187; Lares v. Com., 84 Pa. State 200; Nobles v. Ga., 168 U. S. 398; State v. Bethune, 88 S. C. 401; 16 C. J. 1338, section 3145; State v. Barker, 79 Neb. 361; State v. Nordstrom, 21 Wash. 403.

The provisions of our Criminal Code correspond very closely to those of the common law. Insanity at the time of the commission of the crime is not covered by specific statutes, and our courts recognize it as a common law defense.

Under section 156, Criminal Code, if the court is of the opinion that there are reasonable grounds to believe that a defendant on trial is insane an inquest is immediately held, and if adjudged insane he is conveyed to the nearest asylum to be there confined until restored, when he is returned to the jail of the county. Section 287 authorizes the same procedure if insanity develops after verdict of conviction and before sentence. Section 294 directs the sheriff to execute the death penalty, and section 295 authorizes him to suspend the sentence under the conditions of 296, which provide that if after a sentence of death the sheriff is satisfied that there is reasonable ground to believe that the convict is insane or pregnant he may summon a jury of twelve persons and upon oath administered by him and evidence heard, for them to return a written inquisition as to the convict's insanity or pregnancy, and if it be to the effect that such convict is insane or pregnant, the sheriff shall suspend the execution and transmit the inquisition to the Governor.

The Code provisions relating to proceedings after sentence have been amended by the act of March, 1910, as amended by act of March, 1920, now section 1137 1-12, Kentucky Statutes, which requires the death penalty to be executed by the warden of the penitentiary and within the walls of that institution, except in convictions for the crime of rape, which is still executed by the sheriff of the county in which the crime is committed.

It is further provided by section 8 of that act:

"If the condemned under sentence of death be insane or pregnant with child on the day designated for the execution, said execution shall be suspended until said condemned be restored to his or. her right mind or until she be delivered of child, and then said execution shall take place under the warrant of the Governor and at the time therein designated by him unless stayed by due process of law."

From these provisions it would seem that the sheriff is still authorized to hold inquests and suspend execution in cases of insanity developing after the death sentence in cases of rape, and in other cases until the removal of the convict to the penitentiary. Gorman v. Com., 183 Ky. 467.

As to other capital cases in which the sentence is executed by the warden of the penitentiary no other mention is made of the manner in which the insanity or pregnancy of the condemned is to be ascertained nor as to the officer authorized to suspend the judgment of execution in the event the condemned is found to be insane, hence there is some question as to the proper procedure.

As suggested the original inquest in this case was held under the provisions of section 272a, Kentucky Statutes. A reference to the title of that act (chapter 54, Acts 1918) shows that it was intended to provide for the "commitment, care, treatment, training, segregation, custody of feeble-minded, epileptic or insane persons," and to repeal all acts inconsistent therewith, mentioning sections 264 to 271 inclusive, and sections 2156-2171 inclusive of the Kentucky Statutes, no reference whatever being made to the provisions of the Criminal Code above mentioned, and a consideration of it clearly demonstrates that it was not intended to apply to such. We have seen that in civil proceedings to establish lunacy under the provisions of this act not only may the inquest be instituted by any reputable person, but when the procedure pointed out by the statute is followed it becomes the duty of the court to hold the inquest regardless of his own opinion.

If this was made to apply to criminal cases, such proceedings could be instituted at any stage of the trial; even if the judge of the court was satisfied the defendant was sane he would have no discretion; if proper averments were made he would be compelled to order the inquest, not summarily as is the practice in criminal cases, but according to the time fixed in the act, and as an inquest is not conclusive as to sanity except at the time at which it is held, and such proceedings are not a bar to subsequent proceedings of like character, it follows that inquests might be held repeatedly in the event of a verdict of sanity, and the administration of justice greatly hampered, if not thwarted.

Similar conditions would result in the execution of the sentences of the court upon convicted criminals. We have seen that it has always been the policy of the law in such cases for the person charged with the administration of the law to exercise discretion as to holding inquests in criminal cases. Up to the time of final sentence that discretion is vested in the trial judge. After sentence the policy of our laws seems to have been to vest it in the

executioner who was formerly the sheriff in all cases, but now is the sheriff in some, and the warden of the penitentiary in others. By reason and analogy we can see no reason why after the removal of the convict to the penitentiary such an inquest may not be held by the warden of the penitentiary if he is satisfied there are reasonable grounds to believe the condemned insane or pregnant.

In this respect he simply takes the place of the sheriff and performs the same duties except as to the place and manner of execution. He has custody of the condemned and is informed as to his mental condition. Being charged with the solemn execution of the death penalty such an affliction upon the part of the condemned person appeals to his mind and conscience and he is the natural one to intrust with the responsibility of determining whether or not there are sufficient grounds for holding an inquest. He might arbitrarily refuse to act, so might the sheriff or the judge before sentence, but we do not have such case before us now, and it is unnecessary to anticipate what might be done in such event.

It might be urged that he is given no power to make the inquest effective. It is true that the only officers who may suspend the death sentence are the sheriff in the cases above mentioned, the clerk of the Court of Appeals in appeal cases, and the Governor (sections 294-346, Crim. Code), and that no statutory authority is given the warden to suspend the sentence, but it is not to be doubted that the Governor would suspend the sentence at the warden's request upon a verdict of insanity. If under such circumstances the Governor refused to suspend the sentence the courts could act in the premises.

From the foregoing, it may well be doubted if the original inquest was authorized. On the other hand that question is not raised, and we are assuming that the appellant was legally committed to the asylum, and are considering matters other than those relating to restoration only so far as they are applicable to and throw light on the latter question.

In this respect section 253, Kentucky Statutes, provides:

> "Any cured patient who was committed to the asylum while in custody of the law upon a criminal charge shall be delivered to the keeper of the penitentiary, or to the jailer of the county whence he came as the case may require."

The Criminal Code is silent on the question of restoration, and as above suggested the act of March 26, 1918, section 272a, Kentucky Statutes, has repealed all former statutes relating to ordinary lunacy proceedings. It confers the authority of receiving and discharging patients in most cases upon the superintendent. Subsection 26 authorizes him to refuse to receive into the asylum anyone who in his judgment is not insane, even though such person is properly committed. Subsection 36 provides that he may discharge an inmate of such institution if in his judgment he is not insane or his condition is sufficiently improved so that his discharge will not be injurious or detrimental to the public welfare. This is done by filing his written certificate with the board of control. Except that "a person held upon order of court or judge having criminal jurisdiction in an action or proceeding arising from a criminal offense may be discharged upon the superintendent's certificate approved by the court which committed him."

Prior to the enactment of this statute section 253 was the only statutory authority applying to the discharge of persons confined in the asylum who at the time of their commitment were charged with criminal offenses. It may be said that the power to treat a diseased person and to discharge him when cured as provided by that section implies the power to determine when he is cured, and in proceedings in court under this statute it has been the practice of the court to order the return of the defendant and put him on trial upon the certificate of the superintendent of the asylum that he had recovered. Smedley v. Com., 138 Ky. 4; Davidson v. Com., 171 Ky. 488; 174 Ky. 798.

In the Smedley case no question was raised as to the propriety of that procedure. In the Davidson case, pending a trial on the charge of rape, an inquest was held and defendant committed to the asylum. Later he was discharged by the superintendent. On his trial he offered to plead the inquisition in bar. This was refused, and he then demanded a second inquisition, which was also refused. He was convicted and sentenced to a term in the penitentiary and his sentence affirmed.

Thereafter he filed another petition alleging insanity at that time and asking another inquisition, which was also refused, and on a second appeal this judgment was affirmed.

In the two appeals all the above questions were urged as error. The court decided that section 2150 of the statutes required inquests to be instituted by the Commonwealth or county attorney, and therefore such proceedings could not be had on a motion of the defendant himself. It did not discuss the question as to defendant's restoration after the first inquest or as to his right to have a jury to determine the matter before being put upon trial, but it clearly appears that no such inquest was held though demanded by defendant. The question was thus raised, and it is evident that the court deemed the discharge of the defendant by the superintendent as sufficient.

Under a California statute which provided: "Insane persons received into the asylum must, upon recovery, be discharged therefrom," it was said, "This implies the power to determine whether or not the patient has recovered. By an act of March 9, 1885, the resident physician is authorized and it is made his duty to discharge persons who have been improperly committed . . . it would seem therefore that not only the power to discharge an inmate of the asylum is vested solely in the officers of the asylum, but that such power is to be exercised upon one of two grounds only (1) that the inmate has recovered and (2) that he had been improperly committed. . . . A discharge on the first ground is an adjudication that the person has recovered from insanity. Kellog v. Cochran, 87 Cal. 192; 12 L. R. A. 104."

Our attention has been called to no case in which the question was raised as to restoration after the sheriff's inquest, but it seems that the same provision, section 253, applied with equal force to such inquests.

Section 272a, *supra*, makes radical changes in the proceedings regulating restoration after a verdict of insanity in civil inquests, but it is unnecessary for us to decide as to its applicability where property rights are involved.

Insofar as the discharge of the criminally insane is concerned no additional provision is made for a determination of their recovery, but the power theretofore impliedly given the superintendent to make such discharge is therein expressly authorized. True it is provided that the judge of the court shall approve the certificate of discharge of a person who was committed as insane in an action or proceeding arising out of a criminal offense in a court having criminal jurisdiction. Whether ex-

pressly required or not in the former statutes such approval was implied as the court would not have proceeded to trial even after discharge of the defendant from the asylum if it had reasonable grounds to believe he was then insane. By a parity of reasoning the same principle would apply to the executioner, who, as we have seen, exercises the same discretion in holding inquests after the death sentence as does the court before sentence is pronounced.

Such officer is not named in the statute nor required by it to formally approve the superintendent's certificate. But as he has the power to hold another inquest if he is satisfied that there are reasonable grounds to believe the defendant still insane his failure to do this would in itself be a tacit approval of such certificate.

It thus appears that there was no necessity for the inquest in the Christian circuit court, but independently of this and the result of such inquest, the matters set up in the amended petition and the superintendent's certificate accompanying it were sufficient to give that court jurisdiction and in the absence of a showing to the contrary authorized the judgment entered.

In view of these conclusions it is unnecessary to consider the other jurisdictional facts or other matters complained of in connection with the conduct of the inquest.

Judgment affirmed.

Whole court sitting.