Case 80—INDICTMENT—May 4.

# Montgomery v. Commonwealth.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. INSANITY—EXPERT TESTIMONY.—Where the defense in a criminal case is insanity, a physician who, when offered as a witness, states that he has as a physician studied the disease of insanity sufficiently well to give a medical opinion as to the disease, and diagnose the case, is competent to testify as an expert, the extent of his experience and learning going alone to his credibility. It is not necessary that the witness should claim to be an expert.

2. SAME—CONTRADICTION OF WITNESS.—Where a physician testifies as an expert to the effect that in his opinion the defendant was sane at the time of the commission of the alleged offense, it is competent for the defendant, after laying the foundation therefor, to contradict the witness

by showing that before the trial he expressed the opinion that the defendant was insane at the time of the alleged offense.

3. INSANITY AS A DEFENSE FOR CRIME.—To exempt a person from punishment for a criminal act, it is not sufficient to show that he was insane at the time he committed the act. To entitle him to an acquittal on that ground it must appear that by reason of his insanity he either did not know right from wrong at the time he committed the act, or had not sufficient will power to control and govern his actions.

4. EVIDENCE OF INSANITY BOTH BEFORE AND AFTER THE CRIMINAL ACT MAY BE GIVEN TO THE JURY for the purpose of enabling them to determine whether or not the same condition of mind existed at the time the act was committed; but no legal presumption arises from the proof of previous or after insanity that the person was insane at the time he committed the criminal act.

SCOTT & VIOLETT, THOS. R. GORDON AND G. N. ROBINSON FOR APPELLANT.

1. In case of the plea of insanity the character and mental condition of the ancestors of the accused may be proved by hearsay, reputation and tradition. (Blackstone's Com., vol. 3, p. 368; Wharton's Criminal Evidence, sec. 232–3; Wharton's Ev., vol. 1, sec. 190.)

2. The common knowledge of a practicing physician growing out of the usual experience in the profession, renders the practitioner competent to testify as an expert on the question of insanity. (Wharton's Crim. Ev., sec. 408.; Tullis v. Kidd, 12 Ala., 648.; Castner v. Sliker, 33 N. J., 95; Horton v. Green, 64 N. C., 64; State v. Wood, 53 N. H., 484; Dale v. Johnson, 50 N. H., 452; State v. Reddick, 7 Kansas, 143; Davis v. State, 35 Ind., 496; State v. Henker, 6 Iowa, 380.)

3. It is competent for the defense to prove that a witness introduced for the prosecution to prove sanity, expressed a different opinion prior thereto. (Civil Code, sec. 596–7.)

4. A witness to be competent as an expert must have heard all the evidence or answer from a hypothetical case properly stated. (Brown v. Commonwealth, 14 Bush, 410.)

5. When there is proof of insanity prior to the offense charged, the presumption of sanity at the time of the offense is destroyed. (Wharton's Crim. Ev., secs. 729, 730; State v. Lowe, 58 W. Law Rep., 895; 2 Greenleaf on Ev., sec. 689; People v. Frances, 38 Col., 183; Crann v. Holman, 19 Ind., 30.; Saxon v. Whitaker, 30 Ala., 237; State v. Welmer, 40 Wis., 304.

6. When the accused does not testify in his own behalf, it is the duty of the court to instruct the jury that no unfavorable inference is to be drawn therefrom. (Gen. St., 548; Wharton's Crim. Ev., sec. 435.)

Montgomery v. Commonwealth.

JNO. S. GAUNT AND P. W. HARDIN FOR APPELLEE.

The evidence by an expert to be competent must be based not upon his observation and experience in particular cases, but upon a hypothetical case, and he must have knowledge from experience of the particular disease. (Lawson's Expert and Opinion Evidence, 125.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellant was indicted in the Owen Circuit Court for the murder of Miss Ione Kitson. He obtained a change of venue to Franklin county, in which he was tried and convicted of the crime charged, and his punishment was fixed at confinement in the penitentiary for life. From the judgment overruling his motion for a new trial he has appealed.

The evidence shows conclusively that the appellant, without any legal excuse or mitigating circumstances. whatever, shot and killed Miss Ione Kitson, a young lady whose hand he had been seeking in marriage, and she having rejected his suit, he, in revenge, shot and killed her. His only defense before the jury was that of insanity.

He introduced at least three physicians as expert witnesses for him, who testified, from the facts proven on the trial, that he, the appellant, at the time he shot Miss Kitson, was insane, the nature and extent of which rendered him not criminally responsible for his act. On the other hand, the Commonwealth's attorney also introduced expert testimony, which was to the effect that at the time of the shooting the appellant was not insane.

The appellant, in addition to the physicians introduced by him as experts, offered to introduce Dr. Stewart, an eminent physician, having in charge the Feeble-minded

Institute, at Frankfort, Ky., as an expert, in his behalf. The trial judge sustained the objection to allowing Dr. Stewart to testify as an expert. The Doctor stated that he had been a practicing physician for twenty-eight years, and was "competent to give a medical opinion as to insanity, and to diagnose a case of insanity;" "that he was better able to do so than physicians in ordinary practice, though they may have studied the subject." We are at a loss to know why the trial judge ruled that the Doctor was not competent as a witness, unless it was upon the ground that he disclaimed being an expert, or having treated insanity except in a few instances in connection with his medical duties as physician of the Feebleminded Institute. We think that if the physician, when offered as a witness, is able to state that he has, as a physician, studied the disease of insanity sufficiently well to give a medical opinion as to the disease, and diagnose the case, he is a competent witness, the extent of his experience and learning going alone to his credibility. Accordingly, Dr. Stewart was a competent witness. We do not wish to be understood as expressing an intimation as to the importance that should be attached to expert evidence of this sort, or that any importance should be attached to it, but the law does recognize such evidence as competent, and jurors have the right to attach such importance to it as they may deem proper under the circumstances of each case. Here, the expert evidence introduced by the appellant and the Commonwealth was conflicting. Whether or not the evidence of Dr. Stewart, to the effect that the appellant, at the time of the shooting, was insane, would have turned the scale in his favor we

are unable to determine; it is sufficient to say, that it might have done so, and unless we can say, from all the facts and circumstances in the case, that it is clear that the rejection of the evidence did not prejudice the appellant's substantial rights, we must assume that the rejection of the evidence did prejudice them.

Dr. Lawrence was introduced by the Commonwealth, and testified as an expert, to the effect that in his opinion the appellant, at the time of the shooting, was sane. The appellant offered to contradict him, laying the proper foundation therefor by showing that about a month after the killing he expressed the opinion that the appellant was insane at the time he did the shooting. The trial judge rejected this evidence. The opinion of Dr. Lawrence, as to the insanity of the appellant, was competent evidence; it was as competent as any fact proven in the case, whatever the jury might have thought of the ability of Dr. Lawrence to form a correct opinion as to the appellant's mental condition; though they might have had the utmost confidence in his ability in this regard, yet the jurors' suspicion as to the honesty of the Doctor's opinion would necessarily tend to weaken its effect; or their want of confidence in the honesty of his opinion would necessarily destroy its effect. Therefore the appellant had the right to prove that the Doctor had expressed a different opinion, for the purpose of casting a suspicion upon the honesty of the opinion that he expressed on the witness stand, or of destroying its effect *in toto*.

The instructions given by the trial judge are substantially correct.

The appellant asked that the jury be instructed, that if they believed that the appellant, at any time prior to the shooting, was insane, he was presumed to be insane at the time of the shooting; in other words, insanity, once established, was presumed to continue, unless the contrary appeared from the proof in the cause.

If it be established that a person was insane at the time he committed a criminal act, it does not follow that the establishing of that fact alone entitles him to an acquittal.    Something more must appear, to-wit, that by reason of his insanity he did not know, at the time he committed the act, right from wrong, or, if he did, he had not sufficient will-power to control and govern his actions.    This mental condition must exist at the time the person committed the criminal act.    Insanity must not only exist at the time the act was committed, but it must render the person, at said time, incapable of knowing right from wrong, or, if he did know it, insanity must render him incapable of controlling his actions.    A person may be shown to be insane, but the establishment of that fact does not carry with it the presumption that he was not criminally responsible.    His insanity may relieve him from contract obligations, but he will be criminally liable unless he goes further, and shows that it was so violent as to render him incapable of knowing right from wrong, or, if knowing, incapable of controlling his actions.    Therefore, conceding, for the sake of argument, the appellant's proposition to be true in the abstract, it does not follow that it is correct as applied to a criminal case.    But we are not prepared to say that said proposition is correct in any case, unless the insanity is estab--

lished by an inquisition; in which case the presumption would exist and control in civil matters, but would not control in criminal matters for the reasons above indicated.. Evidence of insanity, both before and after the criminal act, may be given to the jury for the purpose of enabling them to determine whether or not the same condition of mind existed at the time the act was committed; but no legal presumption arises from the proof of previous or after insanity, that the person was insane at the time he committed the criminal act; but the jury may draw such inferences of fact from these conditions as they may deem. proper.

We discover no errors in the record except the two above named, for which the case is reversed and remanded, with directions to grant a new trial, and for further proceedings consistent with this opinion.