**Howard SIMPSON, Individually and as next friend on behalf of Scooter Lloyd Simpson, a minor, Appellant,**

**v.**

**James C. GLENN, M.D., Appellee.**

**No. 8624.**

Court of Civil Appeals of Texas, Amarillo.

April 30, 1976.

Rehearing Denied June 1, 1976.

Robin M. Green, Amarillo, for appellant.

Stone, Stone & Chambers, John C. Chambers, Amarillo, for appellee.

ELLIS, Chief Justice.

Appellant Howard Simpson brings this appeal from the judgment of the trial court rendered in favor of appellee James C. Glenn, M.D., that plaintiff-appellant recover nothing from defendant-appellee in this wrongful death suit based upon alleged medical malpractice. Mr. Simpson contends, and we agree, that the trial court erred in excluding in toto a medical doctor's deposition proffered as medical evidence in the case. Reversed and remanded.

Appellant filed this suit in his individual capacity as the surviving husband of Julia Ann Simpson, now deceased, and as next friend and natural father of Scooter Lloyd Simpson, minor son of Howard and Julia Ann Simpson. Mrs. Simpson died on April 19, 1973, in the intensive care unit of an Amarillo, Texas hospital after entering the hospital on April 15, 1973 and undergoing a hysterectomy performed by Doctor Glenn on April 16, 1973.

On the morning following the day of her surgery Mrs. Simpson exhibited signs of confusion and delirium. About 5:45 in the afternoon of that same day Mrs. Simpson experienced a cardiac arrest for which she was given emergency care. However, she died two days later. Although various other acts of negligence were pleaded, Mr. Simpson contends that the basic issue in this lawsuit was whether Doctor Glenn "had properly and adequately maintained the appropriate water and electrolyte balance" in the patient.

During the trial Doctor Glenn, the defendant, and Dr. Carl Thomas Nichols personally testified; the deposition of Dr. Carey Joseph Batson was introduced into evidence. Doctor Batson and Doctor Nichols were the consulting physicians called in by Doctor Glenn on this case. Counsel for the plaintiff Simpson attempted to read into evidence the deposition testimony of Dr. Edward B. Grothaus, a prospective expert medical witness. After objection was made by counsel for Doctor Glenn to the reading into evidence of the deposition testimony, the trial court ruled that all of the testimony of Doctor Grothaus would be excluded from evidence. Counsel for the plaintiff subsequently perfected his Bill of Exceptions and thus preserved the deposition testimony of Doctor Grothaus for consideration in this appeal.

In response to special issues inquiring as to two of eight counts of alleged negligence the jury returned a verdict favorable to Doctor Glenn upon which judgment was rendered by the trial court. The two issues and answers were:

"ISSUE NO. 1

"Do you find from a preponderance of the evidence that Dr. James C. Glenn

failed to order the timely reduction of I.V. fluid being injected into the body of Julia Simpson?

\* \* \* \* \* \*

"ANSWER: We do not

\* \* \* \* \* \*

"ISSUE NO. 4

"Do you find from a preponderance of the evidence that Dr. James C. Glenn failed to make timely use of a consulting doctor when symptoms appeared disclosing problems which he was not qualified to treat?

\* \* \* \* \* \*

"ANSWER: We do not"

From the take-nothing judgment entered in favor of the defendant against the plaintiffs on the basis of the jury's verdict this appeal has been perfected. In one point of error Mr. Simpson contends that the trial court erred in excluding the testimony of Dr. Edward B. Grothaus.

■ Generally, competency of an expert witness is a matter to be determined within the sound discretion of the trial court. See *Louis v. Parchman*, 493 S.W.2d 310 (Tex. Civ.App.—Fort Worth 1973, writ ref'd n. r. e.); *Texas and New Orleans Railroad Company v. Pettit*, 290 S.W.2d 730 (Tex.Civ. App.—Beaumont 1956, writ ref'd n. r. e.) and cases cited therein. In the case of *Pecos & N. T. Ry. Co. v. Coffman*, 56 Tex. Civ.App. 472, 121 S.W. 218 (1909, no writ), in which there was conflict in the medical testimony, it was held that a physician in general practice who has studied a particular disease is qualified to testify concerning it, although he had not made such disease a specialty and had never treated a person therefor, and his want of experience went only to the weight of his testimony, citing Lawson on Expert and Opinion Evidence (1st Ed.) pp. 118–129, inclusive; *Montgomery v. Commonwealth*, 88 Ky. 509, 11 S.W. 475; 1 Wigmore on Evidence §§ 569 and 687. In this case the court significantly stated:

If it be conceded that ordinarily it would have been discretionary with the trial court to exclude the opinion of Dr. Rogers as an expert, we think that under the authorities, and in view of the conflict of testimony upon the issue as to whether or not the plaintiff was suffering from the . . . diseases complained of, it was an abuse of such discretion to exclude said testimony, and its exclusion constituted error for which the judgment of the trial court must be reversed. 121 S.W. at 220.

For further authority to the effect that the witness need not be a specialist in the particular branch of the profession about which testimony is offered, see *Hardware Mutual Casualty Company v. Wesbrooks*, 511 S.W.2d 406 (Tex.Civ.App.—Amarillo 1974, no writ); *Utilities Indemnity Exchange v. Burks*, 7 S.W.2d 1112, 1114 (Tex.Civ.App.— San Antonio 1928, writ dism'd); *Steinberg v. Indemnity Insurance Co. of North America*, 364 F.2d 266 (5th Cir. 1966); 2 C. McCormick & R. Ray, Texas Evidence § 1427, at 270 (2d ed. 1956).

The record discloses that Doctor Glenn is a specialist in obstetrics and gynecology practicing in Amarillo, Texas, whereas Doctor Grothaus is a general surgeon who has practiced basically in two places following the completion of his training: in Visalia, California, for approximately eleven years, and in Sierra Vista, Arizona, for about two years. Doctor Glenn states that the bases for his objection to the admission of Doctor Grothaus' testimony were: (1) Doctor Grothaus was not shown to be conversant with the standards of care of specialists in the field of obstetrics and gynecology, generally; and (2) Doctor Grothaus was not shown to be conversant with the standards of medical care which prevail in Amarillo, Texas, where the surgery, medical treatment and subsequent death of Mrs. Simpson occurred.

It is Mr. Simpson's position that the subject of the excluded testimony, namely, water and electrolyte balance is a concern of all post-surgical care of patients who have undergone serious operations, and is therefore not a concern limited to obstetrics

and gynecology. It is recognized that a hysterectomy is a serious operation. That Doctor Grothaus was not a specialist in obstetrics and gynecology is not controlling upon all the subjects under inquiry in this suit. It is here noted that the consulting doctors whose testimony was admitted were not specialists in obstetrics or gynecology, and their testimony primarily concerned post-operative procedures.

■ Where a particular subject of inquiry is common to and equally developed in all fields of practice, and the prospective medical expert witness has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those which confronted the practitioner charged with malpractice, the witness is qualified to testify. *Porter v. Puryear,* 153 Tex. 82, 262 S.W.2d 933 (1953); *Christian v. Jeter,* 445 S.W.2d 51 (Tex.Civ. App.—Waco 1969, writ ref'd n. r. e.). In *Webb v. Jorns,* 488 S.W.2d 407 (Tex.1972), the Texas Supreme Court held that there were certain minimum safe and accepted practices that cannot vary in any locality.

■ Regarding Doctor Grothaus' familiarity with the recognized standards of care with respect to post-operative care of patients who had experienced serious operations, he was a medical doctor specializing in general surgery. He graduated from the University of Texas Medical School at Galveston, Texas in 1950, completed his internship in Sacramento, California, and took a general surgical residency at Baylor University College of Medicine in Houston, Texas. Doctor Grothaus took an additional two years residency at the Veterans Administration Hospital in Temple, Texas. Subsequent to his medical training he practiced surgery for about eleven years chiefly in a hospital that drew from a population of 90,000 to 100,000, and for two years in a community serving an area with about 20,-000 persons. Doctor Grothaus is licensed to practice in California, Arizona and Texas. Further, his practice was limited to general surgical care and he had performed operations over the years in "hundreds or thousands of cases."

The trial court excluded the deposition of Doctor Grothaus in its entirety, apparently on the basis of his qualifications. It is now recognized that "[t]he controlling factor in determining competence is that the medical witness have 'practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those which confronted the defendant charged with malpractice.'" *Christian v. Jeter* supra. Further, Doctor Grothaus familiarized himself with the specific case of Julia Simpson by examining the copies of the medical records introduced into evidence in this case as well as the deposition of Doctor Glenn and the deposition of each of the two consulting doctors. Based upon his extensive review of the laboratory procedures, the x-rays, intensive care records, the intake and output sheets and the basic hospital records in evidence in this case, Doctor Grothaus stated that the procedures, tests and medical practices in Amarillo, Texas were familiar to him and were the type of medical practices and procedures that were followed and used in other hospitals in which he had practiced.

It is our opinion that the facts concerning Doctor Grothaus' qualifications, experience and history of practice are sufficient to qualify him as a competent witness to testify as to post-operative procedures, including intravenous injection and possible overhydration. Particularly is this important when consideration is given to his testimony which is at variance with that of other witnesses in significant respects. For example, his opinion and conception concerning the term "keep open," as used in connection with the rate of flow in the administering of intravenous fluids by Doctor Glenn and one of the other testifying doctors, was not in agreement with their testimony in that regard. Further, his testimony was not in agreement with that of other witnesses as to the appropriate time for securing services of a consulting physician. Also, his testimony in various respects as to questions of negligence and proximate cause was more detailed, positive and less equivocal than that of other witnesses.

**118**

It is therefore our opinion that since Doctor Grothaus was shown to be sufficiently competent and qualified to testify as to certain post-operative procedures common to the care of patients who had experienced serious operations, and since his testimony was at variance with that of other witnesses in significant respects, it was reversible error to exclude such testimony. *Pecos & N. T. Ry. Co. v. Coffman*, supra, and authorities cited therein. Further, the exclusion of such testimony is regarded as prejudicial to the complaining party in that the jury was not given the opportunity to pass on the weight and credibility of the additional testimony some of which was at variance with that of the other expert witnesses regarding important procedures. Although the testimony of Doctor Grothaus was corroborative of other testimony in certain areas, because of the variances above mentioned, it should not be regarded as merely cumulative of other testimony. Moreover, any variances or discrepancies in the testimony itself did not relate to its admissibility, but were matters relevant to the weight to be given the testimony for evaluation by the trier of the facts. *Hardware Mutual Casualty Company v. Wesbrooks*, supra.

We do not pass upon the admissibility of all the specific portions of Doctor Grothaus' testimony. We have herein determined that the exclusion of such deposition testimony in toto was improper and the competence and admissibility of specific portions of the testimony should be determined within the sound discretion of the court, with the weight and credibility thereof being subject to evaluation by the fact finder in the case. To such extent appellant's point of error is sustained.

For the reasons above stated the judgment of the trial court is reversed and the cause remanded.