In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00293-CV




DOROTHY MERRITT, M.D., GARY HORNDESKI, M.D., & WILLIAM
WARNER, M.D., Appellants

V.

ALVIN G. WILLIAMSON, Appellee




On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 07CV0632


 

MEMORANDUM OPINION
          In this interlocutory appeal, appellants, Dorothy Merritt, M.D., Gary
Horndeski, M.D., and William Warner, M.D., (collectively “the defendant doctors”)
challenge the trial court’s order denying their motions to dismiss the medical
malpractice claims made against them by appellee, Alvin Williamson. In their sole
issue, the defendant doctors contend that the trial court erred by not dismissing the
suit on the ground that Williamson submitted deficient expert reports that did not
satisfy the requirements of Chapter 74 of the Texas Civil Practice and Remedies
Code. We reverse and remand. Background
          Williamson sued the defendant doctors for alleged injuries sustained during the
course of his care and treatment, arising from the alleged failure to ascertain and
properly treat a skin disease known as pyroderma gangrenosum (“PG”). PG is a
condition typically appearing on the abdomen, back or lower extremities of the
patient causing inflammation, blisters and ulcers on the skin.
          Williamson alleges in his second amended petition that the defendant doctors
negligently failed to give a timely diagnosis, prolonging his disease and resulting in
unnecessary treatment. Specifically, Williamson contends that the defendant doctors
collectively engaged in several acts constituting negligence, including: (1) performing
unnecessary surgery; (2) failing to choose an appropriate procedure; (3) failing to
consult a proper specialist; (4) abandoning him; (5) failing to monitor his condition;
(6) failing to treat his condition properly; (7) failing to disclose the risks and hazards
associated with treatment and/or surgical intervention; (8) failing to provide medical
care reasonably required for his condition; and (9) failing to provide medical care
according to the standard of care.
          On June 6, 2007, Williamson served the defendant doctors with four expert
reports pursuant to section 74.351 of the Texas Civil Practice and Remedies Code.



Mark Schusterman, M.D., a plastic surgeon, Lisa Gould, M.D., a plastic surgeon, Ted
Rosen, M.D., a dermatologist, and Dr. Charles Genovese, M.D., an internist authored
the reports. Dr. Gould’s report does not specifically address any of the defendant
doctors. Dr. Schusterman’s report addresses the standard of care only for Dr.
Horndeski. Drs. Rosen’s and Genovese’s reports criticize all three of the defendant
doctors. The defendant doctors filed separate motions to dismiss in which they
asserted that the plaintiff’s expert reports did not satisfy the requirements of Chapter
74. After hearing, the trial court denied the motions to dismiss. 
 
 
Expert Reports



 Standard of Review 
          On appeal, the defendant doctors reassert their challenges to the adequacy of
the plaintiff’s expert reports. We review the trial court’s determination of the
adequacy of an expert report for an abuse of discretion. Am. Transitional Care Ctrs.
of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference to
guiding rules or principles. See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex.
1999). When reviewing matters submitted to the trial court’s discretion, we may not
substitute our own judgment for that of the trial court. Harris County Hosp. Dist. v.
Garrett, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A trial
court does not abuse its discretion merely because it decides a discretionary matter
differently than we would in a similar circumstance. Id.
Analysis 
          In a health care liability claim, the legislature requires that the claimant shall
“serve on each party, or the party’s attorney, one or more expert reports with a
curriculum vitae of each expert listed in the report for each physician or health care
provider against whom a liability claim is asserted.” Tex. Civ. Prac. Rem. Code §
74.351(a) (Vernon Supp. 2007). The statute defines an “expert report” as “a written
report by an expert that provides a fair summary of the expert’s opinions as of the
date of the report regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards, and the
causal relationship between that failure and the injury, harm, or damages claimed.” 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2007). If the
expert report is timely filed and the defendant challenges the report’s adequacy, a trial
court shall grant the motion challenging adequacy if the trial court finds, after
hearing, that the report “does not represent an objective good faith effort to comply
with the definition of an expert report in Subsection (r)(6).” Id. § 74.351(l); see
Palacios, 46 S.W.3d at 877. 
          In assessing the report’s sufficiency, the trial court may not draw any
inferences; the only information relevant to the inquiry is within the four corners of
the document. Palacios, 46 S.W.3d at 878–79. Although the report need not marshal
all the plaintiff’s proof, the Supreme Court explained in Palacios that the report must
include the expert’s opinions on the three statutory elements—standard of care,
breach, and causation. Id.; Gray v. CHCA Bayshore L.P., 189 S.W.3d 855, 859 (Tex.
App.—Houston [1st Dist.] 2006, no pet.). In detailing these elements, the report must
provide enough information to fulfill two purposes if it is to constitute a “good faith
effort.” Palacios, 46 S.W.3d at 878-79. First, the report must inform the defendant
of the specific conduct that the plaintiff has called into question. Id. Second, the
report must provide a basis for the trial court to conclude that the claims have merit. 
Id. A report that merely states the expert’s conclusions as to the standard of care,
breach, and causation does not fulfill these two purposes. Id. Rather, the expert must
explain the basis of his statements and link his conclusions to the facts. Garrett, 232
S.W.3d at 177. However, the report can be informal, and information does not have
to meet the same requirements as the evidence offered in a summary judgment
proceeding or at trial. Id. 
          When a plaintiff sues more than one defendant in a healthcare liability action,
the expert report must set forth the standard of care for each defendant and explain
the causal relationship between each defendant’s individual acts and the injury. Id. 
at 179. Pursuant to section 74.351(i), however, nothing in the section “shall be
construed to mean that a single expert must address all liability and causation issues
with respect to all physicians . . . or with respect to both liability and causation issues
for a physician . . .” . Tex. Civ. Prac. & Rem. Code Ann. 74.351(I) (Vernon Supp.
2007) (emphasis added). Therefore, Drs. Schusterman’s, Gould’s, Genovese’s and
Rosen’s reports may be read together to satisfy the expert report requirements. See
Walgreen Co. v. Headgear, 243 S.W.3d 183, 188 (Tex. App.—Houston [14th Dist.]
2007, no pet.). 
Qualification as Experts
          Drs. Horndeski, the plastic surgeon, and Warner, the infectious disease
specialist, contend that Drs. Rosen, a dermatologist, and Genovese, an internist, do
not qualify as experts to render opinions against them. Williamson, as the experts’
proponent, has the burden to show that the experts are qualified and the expert reports
satisfy the statutory requirements. Mem’l Hermann Healthcare Sys. v. Burrell, 230
S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.). No definitive
guidelines exist for determining whether a witness’s education, experience, skill, or
training qualify him as an expert. Id. at 762. 
          Section 74.351 of the Texas Civil Practice and Remedies Code defines an
“expert,” with respect to a person giving opinion testimony regarding whether a
physician departed from accepted standards of medical care, as one who is qualified
to testify under the requirements of Section 74.401. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(r)(5)(A) (Vernon Supp. 2007). Section 74.401 states that a
physician is qualified to give such testimony against a physician if he 
(1) is practicing medicine at the time such testimony is given or was
practicing medicine at the time the claim arose; (2) has knowledge of
accepted standards of medical care for the diagnosis, care, or treatment
of the illness, injury, or condition involved in the claim; and (3) is
qualified on the basis of training or experience to offer an expert opinion
regarding those accepted standards of medical care.

Tex. Civ. Prac. Rem. Code Ann. § 74.401(a)(Vernon 2005)). 
When determining whether a witness is qualified on the basis of training or
experience, the court shall consider whether, “at the time the claim arose or at the
time the testimony is given, the witness (1) is board certified or has other substantial
training or experience in an area of medical practice relevant to the claim and (2) is
actively practicing medicine in rendering medical care services relevant to the claim.” 
Id. § 74.401(c)(Vernon 2005). 
          The expert testifying in a medical malpractice case need not be a specialist in
the particular branch of the profession for which testimony is offered; the statute
setting out the requisite qualifications focuses not on the defendant doctor’s area of
expertise, but on the condition involved in the claim. Blan v. Ali, 7 S.W.3d 741, 745
(Tex. App.—Houston [14th Dist.] 1999, no pet.). As a board-certified dermatologist
and head of dermatology for Baylor School of Medicine, Dr. Rosen has knowledge
of accepted standards of care for a skin condition. Where a particular subject of
inquiry is common to and equally developed in all fields of practice, and the
prospective medical expert witness has practical knowledge of what is usually and
customarily done by a practitioner under circumstances similar to those which
confronted the practitioner charged with malpractice, the witness is qualified to
testify. Simpson v. Glenn, 537 S.W.2d 114, 116 (Tex. App.—Amarillo 1976, writ
ref’d n.r.e.). The treatment of skin conditions is common to the fields of dermatology,
plastic surgery, and epidemiology; therefore, Dr. Rosen qualifies as an expert. See
Silvas v. Ghiatas, 954 S.W.2d 50, 53–54 (Tex. App.—San Antonio 1997, writ denied)
(determining that orthopedic surgeon was qualified to give expert testimony regarding
negligence of radiologist because specialities intertwined). 
          Similarly, Dr. Genovese explains in his report that he personally has treated
two cases of PG. He also has experience in treating other skin conditions, including
multiple staph infections, spider bites, and has drained and incised abscesses. 
Accordingly, Dr. Genovese is shown to be sufficiently competent and qualified to
testify as to the care of patients with skin conditions, including PG. See Simpson, 537
S.W.2d at 116–18 (concluding that general physician qualified to testify as expert
against physician specializing in obstetrics and gynecology). 
Adequacy of Experts’ Reports


 
          Reading all four reports together, the documents fail to address all three of the
elements necessary under Palacios to satisfy expert report requirements for each
defendant—standard of care, breach of that standard, and a causal relationship
between that breach and Williamson’s injury. Each defendant doctor will be
addressed separately.
          Dr. Merritt
          Drs. Rosen’s and Genovese’s expert reports criticize Dr. Merritt’s treatment of
Mr. Williamson. Dr. Merritt contends that Dr. Rosen’s report is insufficient because
it discusses the defendant doctors’ actions cumulatively and fails to provide a causal
link between Dr. Merritt’s conduct and Mr. Williamson’s injury. Dr. Rosen states,
“The standard of care dictates that Mr. Williamson’s condition should have been
recognized . . . by the various individuals most closely linked to his ongoing care. 
At no time . . . did the medical providers . . . recognize the true nature of his
affliction.” When a plaintiff sues more than one defendant, the expert report must set
forth the standard of care for each defendant and explain the causal relationship
between each defendant’s individual acts and the injury. Garrett, 232 S.W.3d at 179. 
Dr. Rosen speaks collectively of “medical providers” in his general analysis. He
concludes his report by stating, “Several of the physicians providing ongoing 
medical care breached acceptable standards . . . .” A report that merely states the
expert’s conclusions about the standard of care, breach and causation does not
provide notice of the specific conduct at issue or explain the link between those
conclusions and the facts as required under Palacios. Palacios, 46 S.W.3d at 878–79. 
          In addition to discussing the defendant doctors cumulatively, Dr. Rosen’s
report does not constitute a good faith effort to summarize the causal relationship
between Dr. Merritt’s alleged failure to meet acceptable standards and Williamson’s
injury. Dr. Rosen’s report concludes that Dr. Merritt “delivered below standard care
by failing to diagnose, [and] failing to consult.” This conclusion appears after a
cumulative reference to the medical providers throughout the rest of the report. This
statement does not provide sufficient information to link this conclusion specifically
to Dr. Merritt’s alleged breach. See Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 53
(Tex. 2002). Because Dr. Rosen’s report fails to identify any causal link between Mr. 
Williamson’s condition and any specific conduct of Dr. Merritt, and thus does not
satisfy Palacios. Id. 
          Dr. Merritt argues that Dr. Genovese’s report is similarly insufficient in that the
report discusses all defendant doctors cumulatively and omits any causation analysis
that specifically links Dr. Merritt’s care to Williamson’s injury. In his report, Dr.
Genovese discussed each defendant doctor in a separate section. Dr. Genovese’s
report is insufficient in that it does not provide a fair summary of the causal
relationship between Dr. Merritt’s failure to timely diagnose and Williamson’s
damages. Bowie Mem’l Hosp. 79 S.W.3d at 53. Dr. Genovese concludes that after
evaluating Williamson’s recurring infections, “another diagnosis should have been
considered” and “referral to a dermatologist and a biopsy should have been
performed.” In his evaluation of Dr. Merritt’s care, however, Dr. Genovese does not
explain how these actions or inactions proximately caused or worsened Williamson’s
injury. The expert report must address proximate cause as to each defendant and
provide some basis to conclude that an act or omission of the defendant proximately
caused the injury. Bowie Mem’l Hosp., 79 S.W.3d at 53. Accordingly, we sustain Dr.
Merritt’s issue. 
          Dr. Horndeski
          Dr. Horndeski contends that the four reports furnished by Williamson, taken
together, do not adequately address the standard of care, breach, and causation. 
          In order to be sufficient, the expert report must represent a good-faith effort to
provide a fair summary of the expert’s opinions. Palacios, 446 S.W.3d at 878-79. 
While a fair summary is something less than a full statement of the applicable
standard of care and how it was breached, even a fair summary must set out what care
was expected, but not given. Id. at 880; see Garrett, 232 S.W.3d at 179. Standard
of care is defined by what an ordinarily prudent healthcare provider or physician
would have done under the same or similar circumstances. Strom v. Mem’l Hermann
Hosp. Sys., 110 S.W.3d 216, 222 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). 
Physicians need only exercise ordinary or reasonable care and skill under the
circumstances. Schneider v. Haws, 118 S.W.3d 886, 890 (Tex. App.—Amarillo
2003, no pet.). 
          In his expert report, Dr. Genovese report addresses the statutory elements of
breach and causation, but falls short in identifying the standard of care. Dr. Genovese
states that the physician caused injury to the patient and did not meet the standard of
care. He explains that the lack of diagnosis should have been questioned, other
treatment should have been considered, and Williamson should have been referred
to a specialist. Dr. Genovese concludes that, because of the failure to question the
diagnosis, Dr. Horndeski performed unnecessary surgeries, which caused unnecessary
pain, scarring and contractures, likely making “the patient’s hands near useless.” 
However, Dr. Genovese does not give any specific information about what the
defendant doctors should have done differently. Consequently, Dr. Genovese’s report
does not meet the good faith standard required by Palacios. See Palacios, 46 S.W.3d
at 879–80 .
          Dr. Schusterman’s report is similarly inadequate. Dr. Schusterman explains
that a competent plastic surgeon, “would have at least started to wonder why the
diseases kept recurring” and “ would have started to be curious after the third or
fourth surgery why the skin ulcers were recurring.” He states that Dr. Horndeski’s
“lack of any attempt to discover an etiology for Mr. Williamson’s disease, and his
continued operative intervention despite continued failure fall well below the
standard of care for a competent, well trained plastic surgeon.” It is the substance of
the opinions, not the technical words used, that constitutes compliance with the
statute. Cayton v. Moore, 224 S.W.3d 440, 445 (Tex. App.—Dallas 2007, no. pet.). 
Merely reciting the term “standard of care,” without setting out or describing what
actions or courses of action are encompassed within the standard, does not satisfy the
requirement that a report substantively express the applicable standard of care. In re
Brown, 190 S.W.3d 4, 7 (Tex. App.—Amarillo 2005) (orig. proceeding). The report
wholly fails to specify any action that Dr. Horndesku should have taken. 
           Dr. Rosen’s report likewise fails to adequately inform Dr. Horndeski or the
court of the basis for his conclusions. See Gray, 189 S.W.3d at 860. When a plaintiff
sues more than one defendant, the expert report must set forth the standard of care for
each defendant and explain the causal relationship between each defendant’s
individual acts and the injury. Garrett, 232 S.W.3d at 179. Dr. Rosen’s report
generally addresses all four physicians, stating, “Mr. Williamson’s condition should
have been recognized . . . by the various individuals most closely linked to his
ongoing medical care.” While the report mentions Dr. Horndeski by name, it fails to
identify any acts or omissions by Dr. Horndeski that proximately caused
Williamson’s injuries. Bowie Mem’l Hosp., 79 S.W.3d at 53. Because none of these
reports meet the Palacios requirements with respect to Dr. Horndeski, we sustain his
issue as well.
          Dr. Warner 
          Dr. Warner first contends that Drs. Rosen and Genovese are not qualified to
offer an opinion on the standard of care relevant to an infectious disease specialist. 
As we have already concluded, both experts are qualified to render opinions. 
However, Dr. Warner also challenges the reports contending that they fail to set forth
the requisite standard of care applicable to an infectious disease specialist and how
Dr. Warner’s actions proximately caused Mr.Williamson’s injury. 
          The parts of Dr. Rosen’s report relevant to Dr. Warner’s challenge state that
Mr. Williamson’s condition should have been recognized by the “various individuals
most closely linked to his on going medical care” and that “had the proper diagnosis
been established, surgery could have been avoided and appropriate medical therapy
instituted.” These statements refer generally to “medical providers” and do not
identify Dr. Warner by name. Dr. Rosen specifically references Dr. Warner only once
concluding that, “Dr. Warner delivered below standard care by failing to diagnose,
failing to consult outside his specialty, and tacitly approving of surgery.” This single
sentence does not inform Dr. Warner with sufficient specificity how these actions
proximately caused Mr.Williamson’s injury. See Jernigan v. Langley, 195 S.W.3d
91, 93–94 (Tex. 2006). 
          Dr. Genovese’s report states that the applicable standard of care was breached 
due to failure to propose a different diagnosis, failure to consult outside his specialty
for additional tests and biopsies, and failure to properly recognize a reaction to
antibiotics. The weakness that undermines Dr. Genovese’s report is his failure to
state the statutory element of causation. The report does not explain how Dr.
Warner’s departure from the stated standard of care caused Williamson’s injury. See
Gray, 189 S.W.3d at 860. Accordingly, we sustain Dr. Warner’s issue.
30-Day Extension
          In his response to the defendant doctors’ motions to dismiss, Williamson
requested that, if the trial court found the reports deficient, he be granted a extension
to cure the defect. Section 74.351(c) provides for a one-time extension to cure
defects in an expert’s report. “If an expert report has not been served within the
period specified by Subsection (a) because elements of the report are found deficient,
the court may grant one 30-day extension to the claimant in order to cure the
deficiency.” Tex. Civ. Prac. & Rem. Code Ann §74.351(c)(Vernon Supp. 2007). 
Courts have held that if an expert report does not mention the defendant doctor at all,
or merely makes a passing reference to a physician, it does not constitute a sufficient
report, and an extension is not warranted. See Webb, 228 S.W.3d at 283; Garcia v.
Marichalar, 185 S.W.3d 70, 74 (Tex. App.—San Antonio 2005, no pet.). However,
if the defects are curable under section 74.351(c), then the trial court has discretion
to allow a 30-day extension of the deadline “in order to cure the deficiency.” Webb,
228 S.W.3d at 284 (citing Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex. 2006)). 
          Here, Dr. Rosen’s and Dr. Genovese’s reports are deficient because they both
fail to expressly state the standard of care and the link between the defendant doctor’s
conduct and the expert’s conclusions. See Webb, 228 S.W.3d at 284. Dr. Rosen
states, “Dr. Merritt delivered below standard of care by failing to diagnose and failing
to consult. Dr. Warner delivered below standard of by failing to diagnose, failing to
consult outside his specialty, and tacitly approving of surgery. Dr. Horndeski
delivered below standard of care by failing to diagnose, failing to consult and
primarily, by performing multiple unnecessary surgical procedures . . . .” Dr.
Genovese states multiple times, in reference to all three physicians, “In my medical
opinion, this physician did not meet the standard of care based on reasonable medical
probability and committed medical malpractice.” These conclusory statements do not
explain the standard of care, what each doctor should have done differently, or how
each doctor’s actions proximately caused Williamson’s injury. 
          Because the district court determined that these reports were sufficient, the
court did not consider whether Williamson was entitled to a 30-day extension. See
Austin Heart, P.A. v. Webb, 228 S.W.3d 276, 283 (Tex. App.—Austin 2007, no pet.
h.). We remand the case for the trial court to determine whether it should grant
Williamson’s request for an extension. See id.
Conclusion 
          We reverse the trial court’s ruling denying the defendant doctors’ motions to
dismiss, and we remand the case for the trial court to determine whether to grant a 30-day extension. See Tex. Civ. Prac. Rem. Code Ann. § 74.351(c).
 
 
 
 
 

                                                             George C. Hanks, Jr.
                                                             Justice
 
Panel consists of Justices Nuchia, Alcala, and Hanks.